No. 23-1235

_____

**UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**
_____

RANDY RICHARDSON,

*Plaintiff-Appellant*,

v.

PRINCE GEORGE'S COUNTY, ANGELA ALSOBROOKS,
AND MELINDA BOLLING,

*Defendants-Appellees.*
_____

Appeal from the United States District Court
for the District of Maryland, Greenbelt Division
Case No. 8:22-cv-00487
_____

**BRIEF OF APPELLANT RANDY RICHARDSON**
_____

JORDAN HOWLETTE
Managing Attorney
JD Howlette Law
1140 3rd St. NE
Washington, DC 2002
Tel: (202) 921-6005
Fax: (202) 921-7102
jordan@jdhowlettelaw.com

*Counsel for Plaintiff-Appellant*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __23-1235__      Caption: __Randy Richardson v. Prince George's County, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Randy Richardson__
(name of party/amicus)

_____

who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

12/01/2019 SCC

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: _____*Jordan Howlette*_____    Date: ____3/7/2023____

Counsel for: Appellant Randy Richardson

Print to PDF for Filing

# TABLE OF CONTENTS

**Page**

Table of Authorities.................................................................................... iii

Jurisdictional Statement........................................................................... 1

Statement of the Issues............................................................................. 1

Statement of the Case............................................................................... 2

    A.    Relevant Facts............................................................................ 4

        1.    *The Shops at Iverson Mall*........................................ 4

        2.    *Richardson's efforts to open business at Iverson Mall*........... 6

        3.    *DPIE's discriminatory actions*................................. 9

    B.    Procedural History............................................................ 15

    C.    Rulings Present for Review............................................... 16

Summary of Argument............................................................................. 17

Argument.................................................................................................. 19

I.    The district court erred in granting Appellees' motion for judgment on the pleadings based upon its finding that Richardson's claims were "too speculative" for Article III purposes............................. 19

    A.    Standard of Review.......................................................... 21

    B.    Richardson alleged adequate facts to establish that he has standing to pursue his claims and that they are ripe for adjudication...................................................................... 22

*1.* *Richardson's allegations sufficiently demonstrate that applying for a U&O permit would have been a futile effort*.............................................................. 25

*2.* *Richardson's claims are ripe for judicial review*................... 27

II. The district court abused its discretion in entertaining Appellees' Motion for Judgment on the Pleadings after the parties engaged in substantial discovery................................................................... 29

 A. Standard of Review......................................................... 30

 B. Richardson should have been afforded an opportunity to present the evidence he gathered during the six months of discovery that would have filled in any perceived gaps in his Complaint................................................................... 31

Conclusion....................................................................... 33

Request for Oral Argument.............................................. 34

Certificate of Compliance................................................. 35

# TABLE OF AUTHORITIES

## Cases

*Adarand Constructors, Inc. v. Pena*, 515 U.S. 200 (1995) .....................................23

*AM Gen. LLC v. Demmer Corp.*, No. 3:12-cv-333,
    2013 WL 5348484 (N.D. Ind. Sept. 23, 2013)................................................32

*Butler v. United States*, 702 F.3d 749 (4th Cir. 2012) ...........................................21

*Carney v. Adams*, 141 S. Ct. 493 (2020) ............................................... 19, 23, 24, 25

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006)............................................28

*Doe v. Va. Dep't of State Police*, 713 F.3d 745 (4th Cir. 2013)..............................28

*Drager v. PLIVA USA, Inc.*, 741 F.3d 470 (4th Cir. 2014) .....................................21

*Edwards v. City of Goldsboro*, 178 F.3d 231 (4th Cir. 1999) .................................21

*Gasner v. Bd. of Supervisors*, 103 F.3d 351 (4th Cir. 1996) ..................................28

*Ginsburg v. InBev NV/SA*, 623 F.3d 1229 (8th Cir. 2010) .............................. 30, 31

*Grajales v. Puerto Rico Ports Authority*, 682 F.3d 40 (1st Cir. 2012)............ 30, 31

*Gratz v. Bollinger*, 539 U.S. 244 (2003)...................................................... 20, 23, 24

*Hamilton v. Pallozzi*, 848 F.3d 614 (4th Cir. 2017) .................................................25

*Hollingsworth v. Perry*, 570 U.S. 693 (2013).........................................................19

*Ideal Steel Supply Corp. v. Anza*, 652 F.3d 310 (2nd Cir. 2011) ...........................31

*Language Drs., Inc. v. MCM 8201 Corp., LLC*,
    No. 20-CV-1755, 2021 WL 718940 (D. Md. Feb. 24, 2021) ........................29

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .............................................20

*Massey v. Ojaniit*, 759 F.3d 343 (4th Cir. 2014) ....................................................21

*Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*,
    674 F.3d 369 (4th Cir. 2012) ...........................................................................21

*Northeastern Fla. Chapter, Associated Gen. Contractors*
    *of America v. Jacksonville*, 508 U.S. 656 (1993) ............................................23

*Perez v. Oak Grove Cinemas, Inc.*, No. 3:13-cv-728-HZ,
    2014 WL 1796674 (D. Or. May 5, 2014) ..........................................................32

*Prayze FM v. F.C.C.*, 214 F.3d 245 (2d Cir. 2000) ..................................................25

*Prynne v. Settle*, 848 F. App'x 93 (4th Cir. 2021) ...................................................21

*Reddy v. Foster*, 845 F.3d 493 (1st Cir. 2017) ........................................................28

*Reynolds Assocs. v. Kemp*, 1992 WL 207747 (4th Cir. August 28, 1992) ..............31

*Sheppard v. Beerman*, 18 F.3d 147 (2nd Cir. 1994) ................................................21

*Somerville v. West Town Bank & Trust*,
    2020 WL 8256358 (D. Md. Dec. 4, 2020) ........................................................22

*Sporhase v. Nebraska ex rel. Douglas*, 458 U.S. 941 (1982) ..................................22

*Stevens v. Showalter*, 458 B.R. 852 (D. Md. 2011) ..................................................32

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) ........................................20

*Texas v. United States*, 523 U.S. 296 (1998) ............................................................28

*United Mine Workers of Am. V. Wellmore Coal Corp.*,
    609 F.2d 1083 (4th Cir. 1979) .........................................................................21

*United States v. Byrd*, 859 F. App'x 669 (4th Cir. 2021) .........................................31

*Warth v. Seldin*, 422 U.S. 490 (1975) .....................................................................20

**Statutes**

28 U.S.C. § 1291 ..........................................................................................1

28 U.S.C. § 1331 ..........................................................................................1

28 U.S.C. § 1343(a) ......................................................................................1

**Rules**

Fed. R. App. P. 10 ......................................................................................32

Fed. R. App. P. 28(e) .................................................................................32

Fed. R. App. P. Rule 34(a) .........................................................................34

Fed. R. Civ. P. 12(b)(6) ....................................................................... 21, 22

Fed. R. Civ. P. 12(c) ............................................................................ passim

**Treatises**

Wright & Miller, 5C Fed. Prac. & Proc. Civ. § 1368 (3d ed.) ................................30

## JURISDICTIONAL STATEMENT

This appeal is taken from the district court's order granting Appellees'

motion for judgment on the pleadings. J.A. 094. The district court had jurisdiction

over Plaintiff-Appellant Randy Richardson's ("Richardson") claims under 28

U.S.C. §§ 1331 and 1343(a). J.A. 007. Richardson filed a timely notice of appeal

on February 28, 2023. J.A. 104. This Court has jurisdiction under 28 U.S.C. §

1291.

## STATEMENT OF THE ISSUES

1.      Richardson challenged Appellees' discriminatory practices that

wrongfully prohibited him—a minority small business owner—from participating

in the local permitting process on an equal playing field with large businesses. He

alleged sufficient facts that, if accepted as true, not only demonstrate that he was

able and ready to apply for a permit, but that applying for a permit would have

been a futile exercise on his part due to the unlawful barrier erected by Appellees.

Thus, did the district court err in holding that Richardson's civil rights claims were

"too speculative" for Article III purposes at the pleadings stage such that he should

be barred from pursuing them on the merits?

2.      Appellees moved for judgment on the pleadings on July 26, 2022.

Thereafter, Richardson invested substantial resources in pretrial discovery over a

period of six months, culminating in the voluminous production of evidence that

supports his claims and undermines Appellees' defenses. Shortly after the close of discovery, and three days before the deposition of Appellee Melinda Bolling,[1] the district court granted Appellees' motion without a hearing or otherwise affording Richardson the opportunity to present the evidence gathered in discovery that reinforces his claims. Thus, in light of the substantial pretrial discovery that occurred after Appellees filed their Rule 12(c) motion, did the district court abuse its discretion by entertaining Appellees' motion without affording Richardson the opportunity to present the evidence he gathered that readily fills in any perceived gaps in the Complaint?

## STATEMENT OF THE CASE

This appeal presents important questions of law regarding the evaluation of Article III standing and ripeness in the context of an equal protection challenge, and the appropriate pleading threshold for an aggrieved party to invoke the futility exception under either doctrine. This appeal also presents important issues involving the fair and equal application of Appellee Prince George's County's local building code to all similarly situated business owners, regardless of size, status, or ethnicity, which holds significant implications for the entrepreneurial spirit and economic diversity throughout the County. Plaintiff-Appellant Randy

---

[1] Appellee Melinda Bolling is the former Director of Prince George's County Department of Permitting, Inspections and Enforcement.

Richardson challenged the official policies or customs instituted by Prince George's County Department of Permitting, Inspections and Enforcement ("DPIE") that deprived him of equal protection under the law by distinctly favoring large businesses over small businesses in the procurement of Use and Occupancy (U&O) permits. Specifically, Richardson alleged that DPIE's permitting and enforcement practices at Iverson Mall in Temple Hills, Maryland unduly burdened him and other small business tenants who sought U&O permits—a requirement to lawfully operate a business in the County—while at the same time providing a smoother, favorable, and less burdensome pathway for large corporations to obtain U&O permits.

Richardson's allegations demonstrate that DPIE's practices at Iverson Mall created an environment where the balance of opportunity was tilted against small business owners like him, thereby discouraging entrepreneurship, stifling local commerce, and threatening the diversity of business offerings that make Iverson Mall a vibrant and unique destination. Through this appeal, Richardson respectfully challenges the district court's determination that his allegations, as pled, are "too speculative" for Article III purposes. Richardson further challenges the district court's decision to entertain Appellees' motion for judgment on the pleadings without a hearing or affording Richardson the opportunity to present

3

evidence gathered throughout the six-month discovery period that would
demonstrate how Appellees' actions infringed upon his constitutional rights.

Accordingly, and for the reasons set forth below, Richardson respectfully
requests that the Court reverse the district court's order and remand the case with
directions to the district court to deny Defendants' Motion for Judgment on the
Pleadings.

**A.     Relevant Facts**

*1.  Overview of the Shops at Iverson Mall.*

In 2014, AWE-AR Iverson Mall LLC ("AWE") purchased the Shops at
Iverson Mall ("Iverson Mall"), a 525,000-square-foot shopping center consisting of
retail, restaurant, and office space located at the intersection of Branch Avenue and
Iverson Street in Temple Hills, Maryland. J.A. 008. AWE was organized as a joint
venture between America's Realty LLC and West End Capital Group. J.A. 008 and
009. America's Realty LLC and West End Capital Group are owned or controlled
by individuals who do not belong to an ethnic or racial minority group, and both
entities have significant political influence and connections in Prince George's
County. J.A. 009.

At the time AWE purchased Iverson Mall, it did not possess the required
permits from DPIE to occupy, use, or structurally alter Iverson Mall. J.A. 009. As
the Agency in charge of permitting throughout Prince George's County, DPIE

4

knew or should have known that AWE did not possess the required permits to begin occupying, using, or structurally altering Iverson Mall. J.A. 007 and 009. Despite having knowledge of the permit deficiencies, DPIE representatives allowed AWE to occupy, use, and structurally alter Iverson Mall. J.A. 009.

In 2017, America's Realty LLC and West End Capital Group initiated a multi-million-dollar renovation project to significantly improve Iverson Mall. J.A. 009. The renovation project was funded in part by a $4,000,000.00 grant or loan provided by Prince George's County's Economic Development Incentive Fund, the largest grant issued under the program. J.A. 009 and 010. AWE did not possess a U&O permit prior to performing the renovation work at Iverson Mall. J.A. 010. DPIE and the Office of the County Executive knew or should have known that AWE did not possess the required permits, including a U&O permit, prior to performing the renovation work at Iverson Mall. J.A. 010. Despite having knowledge of the permit deficiencies, DPIE and the Office of the County Executive allowed AWE to perform the renovation work associated with the $4,000,000 award. J.A. 010.

From 2017 through 2021, several new businesses opened at Iverson Mall, including Burlington Coat Factory, Shoppers World, and Chipotle Mexican Grill. J.A. 010. DPIE representatives allowed these new businesses to open and operate at Iverson Mall even though DPIE knew or should have known that AWE did not

possess a U&O permit for Iverson Mall. J.A. 010. The new businesses that opened at Iverson Mall during this time were more influential and politically connected than the other business tenants that DPIE impermissibly prevented from participating in the permitting process on an equal playing field. J.A. 008 and 011. Knowing that AWE did not possess a valid U&O permit, DPIE should have posted notices on the entryway doors to Iverson Mall to inform the public that the mall was not approved for occupancy. J.A. 011.

### 2. *Richardson's efforts to open Town Hall Live at Iverson Mall.*

Plaintiff-Appellant Randy Richardson is an African American entrepreneur and the sole owner of Town Hall Live, LLC ("Town Hall Live"). J.A. 007. In January 2020, Richardson began leasing[2] the commercial space at 3701 Branch Avenue, Suite 1000, Temple Hills, Maryland 20748 (hereinafter referred to as the "Branch Avenue Property"), with the intent of opening Town Hall Live—a for-profit business—at Iverson Mall. J.A. 011 and 036. At the time Richardson executed the lease for the Branch Avenue Property, he was unaware that Iverson Mall did not have a valid U&O permit. J.A. 011.

The Branch Avenue Property was previously occupied by the Community of Hope AME Church (the "Church"). J.A. 012. The Church operated out of the

---

[2] Evidence obtained in discovery confirmed that Richardson executed the lease on November 15, 2019.

6

Branch Avenue Property for years without possessing the proper permits from DPIE to do so. J.A. 012. DPIE representatives allowed the Church to continue operating out of the Branch Avenue Property despite knowing that it did not possess a valid U&O permit. J.A. 012. On July 30, 2019, DPIE conducted an inspection of the Church and Iverson Mall. J.A. 012. During the inspection, DPIE representatives observed several building code violations but did not take any enforcement actions against the Church or Iverson Mall to correct the violations. J.A. 012 and 013. Instead, DPIE representatives allowed both the Church and Iverson Mall to continue operating at their respective locations. J.A. 013.

On January 22, 2020, Richardson met with representatives of the Board of License Commissioners to request that his liquor license be transferred or reassigned to the Branch Avenue Property. J.A. 013. The Board granted his request and transferred or reassigned the liquor license to the Branch Avenue Property. J.A. 013. On January 27, 2020, Richardson met with DPIE representatives to discuss opening Town Hall Live, during which he learned that the owners of Iverson Mall did not have a U&O permit. J.A. 013. The DPIE representatives told Richardson that he could apply for the necessary permits to open Town Hall Live at the Branch Avenue Property, but that DPIE would need to first resolve Iverson Mall's permit deficiencies before the Agency could grant him a U&O permit. J.A. 013. The DPIE representatives assured Richardson that Iverson Mall's permit

7

deficiencies would be resolved in short order. J.A. 013. On January 29, 2020, in reliance on the representations made by the DPIE representatives, Richardson filed an initial non-load bearing wall permit application for the Branch Avenue Property. J.A. 013.

On February 11, 2020, Richardson met again with DPIE representatives to discuss the building permit situation for the Branch Avenue Property. J.A. 013. DPIE representatives repeated the same thing that was relayed during the January 27th meeting. J.A. 013. During the meeting, Richardson sought more information about the specific issues with Iverson Mall's building permits. J.A. 014. In response, the DPIE representative told Richardson that "the information [was] above their paygrades." J.A. 014. Richardson further sought an explanation for why DPIE could not grant him a U&O permit to open Town Hall Live at the Branch Avenue Property when there were other businesses operating—and new businesses opening—at Iverson Mall. J.A. 014. In response, the DPIE representatives told Richardson that "the information [was] above their paygrades." J.A. 014.

On April 17, 2020, DPIE issued Richardson the electrical permit for the Branch Avenue Property. J.A. 014. In accordance with the permit, Richardson performed the electrical rough-in work at the Branch Avenue Property. J.A. 014.

Between April 2020 and February 2021, Richardson contacted DPIE representatives on several different occasions regarding the status of Iverson Mall's U&O permit. J.A. 014. During each of these conversations, Richardson asked DPIE representatives when he would be able to apply for a U&O permit to open Town Hall Live at the Branch Avenue Property. J.A. 014. The DPIE representatives repeatedly told Richardson that DPIE would need to first resolve the issues with Iverson Mall's building permits prior to granting him a U&O permit for the Branch Avenue Property. J.A. 014. The DPIE representatives repeatedly assured Richardson that the issues with Iverson Mall's U&O permit would be resolved in short order. J.A. 014.

In reliance on the representations made by DPIE, Richardson expended a significant amount of time and financial resources in preparing to open Town Hall Live at the Branch Avenue Property. J.A. 014. After Richardson filed a second non-load bearing wall permit application on February 24, 2021, DPIE representatives began intentionally targeting him with ill-motivated inspections of the Branch Avenue Property. J.A. 015.

### 3. DPIE's discriminatory actions and arbitrary policies.

On February 26, 2021, two days after Richardson filed the second non-load bearing wall permit application, a DPIE representative conducted an onsite inspection of the Branch Avenue Property. J.A. 015. The DPIE representative did

9

not provide any advance notice to Richardson, and the representative did not

access the interior portion of the Branch Avenue Property to conduct the

inspection. J.A. 015. At the conclusion of the inspection, the DPIE representative

issued Richardson a Correction Order for the Branch Avenue Property that

included a fine citation in the amount of $6,500. J.A. 015. The Correction Order

was issued to the wrong property address—it was issued to 3705 Branch Avenue

instead of 3701 Branch Avenue. J.A. 015. The Correction Order cited Richardson

for lacking electrical, mechanical, WSSC, and sprinkler permits, and for lacking a

fire alarm report. J.A. 015. The DPIE representative incorrectly cited Richardson

for the code violations because Richardson did in fact possess a fire alarm report, a

sprinkler report, and a valid electrical permit—issued by DPIE on April 17, 2020.

J.A. 015. Richardson was not legally required to obtain the other permits identified

in the Correction Order because no changes were being made to those systems.

J.A. 015.

　　　In February or March of 2021, Shoppers World opened for business in the

space directly above the Branch Avenue Property. J.A. 015 and 035. Shoppers

World opened for business despite DPIE representatives telling Richardson that no

new U&O permits could be issued to tenants at Iverson Mall until the issues with

AWE's building permits were resolved. J.A. 015 and 016. At the time Shoppers

World opened at Iverson Mall, the issues with AWE's building permits were

10

unresolved. J.A. 016. Shoppers World shared, among other things, the same sprinkler system with the Branch Avenue Property, yet did not receive any correction orders or stop work orders from DPIE. J.A. 016.

Richardson contacted DPIE again to find out how Shoppers World was able to open and obtain a U&O permit if Iverson Mall's building permits had not yet been resolved. J.A. 016. The DPIE representative told Richardson that he was not privy to the information that would allow for a definitive answer to the question. J.A. 016. On March 2, 2021, Appellee Melinda Bolling, the former Director of DPIE, sent Richardson an email confirming that "[t]he County Executive and executive leadership [were] aware of the problems and many challenges at [the Iverson Mall]." J.A. 016. Ms. Bolling further informed Richardson that "[they] would like to schedule a meeting when [they] are able to talk about potential long-term solutions for [the Branch Avenue Property]." J.A. 016.[3]

On September 24, 2021, DPIE issued Richardson a third Correction Order that included a fine of $2,000 for allegedly removing the prior Correction Order from the property and for continuing construction work at the Branch Avenue Property. J.A. 017. The DPIE representative did not access the interior portion of the Branch Avenue Property during his inspection of the property. J.A. 017.

---

[3] Evidence gathered in discovery confirmed that Ms. Bolling abruptly cancelled this meeting at the last minute, and thereafter refused to speak with Richardson about the matter despite his repeated requests for a meeting.

Richardson did not remove the prior Correction Order from the property, and no additional construction was performed at the Branch Avenue Property. J.A. 017. Richardson immediately contacted DPIE to advise them that he had not removed the prior Correction Order from the property. J.A. 017. Upon searching DPIE's payment portal, Richardson learned that the fine associated with the third Correction Order was never entered into DPIE's database.

On the evening of September 24, 2021, Molly Byron, the Director of Government Accountability for the Office of the County Executive, called Richardson and apologized for the enforcement actions taken against him by DPIE. J.A. 018. Ms. Byron told Richardson that there was a "disconnect" between the Director of DPIE and the Office of the County Executive. J.A. 018. Ms. Byron assured Richardson that DPIE's "targeted" enforcement actions against him would cease from this point forward. J.A. 018. After the meeting with Ms. Byron on September 24, 2021, DPIE ceased all further enforcement actions against Richardson and the Branch Avenue Property despite no change in Richardson's actions or positions. J.A. 018. On October 25, 2021, Ms. Byron instructed DPIE to remove the Correction Order and the Stop Work Order posted to the front door of the Branch Avenue Property. J.A. 018. DPIE complied with Ms. Byron's instructions. J.A. 018.

On or about October 27, 2021, James McCarthy, Prince George's County Deputy Chief Administrative Officer for Government Operations, met in person with Richardson to discuss the possibility of settling the matter. J.A. 018. Mr. McCarthy informed Richardson that Iverson Mall would soon be sold and that "they" did not want Richardson to invest any more money into the Branch Avenue Property. J.A. 018. Mr. McCarthy told Richardson that "they" did not want the Plaintiff to be hurt any further than he had already been throughout this process. J.A. 018.

On November 1, 2021, Joy Russell, Chief of Staff to PGC's County Executive, and Ryan Middleton, Special Assistant to the Chief of Staff for the Office of the PGC Executive, spoke with Richardson about the deficiencies with AWE's permits for Iverson Mall that had prevented the Richardson from seeking a U&O permit for the Branch Avenue Property. J.A. 019. During the conversation, Ms. Russell informed Richardson that the County would "make him whole" for the damages he incurred in connection with DPIE's handling of the permit situation. J.A. 019.

DPIE employees intentionally and maliciously singled-out Richardson in its permit, inspection, and enforcement practices from January 27, 2020 through September 24, 2021. J.A. 019. The permit, inspection, and enforcement actions taken by DPIE against Richardson were materially different from those actions

13

taken against similarly situated businesses operating at the Iverson Mall. J.A. 019.

DPIE representatives intentionally and maliciously prevented Richardson from

participating on an equal playing field in the permitting process by repeatedly

representing that the Agency could not grant him a U&O permit for the Branch

Avenue Property until the deficiencies with AWE's permits for Iverson Mall were

resolved. J.A. 019. The repeated claims by DPIE representatives that the Agency

could not grant Richardson a U&O permit for the Branch Avenue Property until

AWE obtained a U&O permit for Iverson Mall were discriminatory, irrational, and

arbitrary because DPIE granted the same or similar permits to other similarly

situated businesses operating at the Iverson Mall. J.A. 020.

DPIE representatives improperly singled-out and targeted Richardson with

inspection and enforcement actions while allowing other similarly situated

businesses—like Shoppers World—to continue operating at Iverson Mall with

impunity. J.A. 020. DPIE's improper inspection and enforcement actions resulted

in the assessment of unwarranted fines against Richardson. J.A. 020. Through its

official policies or customs, DPIE intentionally and arbitrarily engaged in improper

permit, inspection, and enforcement actions against Richardson that prevented—

and continue to prevent—him from lawfully conducting business at the Branch

Avenue Property. J.A. 020. Through its official policies or customs, DPIE

intentionally and arbitrarily imposed a barrier against Richardson that unlawfully

14

prevented him from being able to participate in, and being considered for, a U&O permit on an equal playing field. J.A. 020. All the while, DPIE provided preferential treatment to large, politically connected business tenants at Iverson Mall, and did not impose the same barrier against these businesses that impermissibly deprived Richardson and other small business tenants of equal treatment under the law. J.A. 020, 021, and 022.

The actions taken by DPIE representatives, in conformity with its official policies or customs, caused Richardson to suffer damages of approximately $3,050,835.63. J.A. 022. Richardson made several attempts to resolve the dispute with Appellee Prince George's County, all of which were unsuccessful. J.A. 022. Appellee Prince George's County had actual or constructive notice of Richardson's damages and claims. J.A. 022.

## B.    Procedural History

On March 1, 2022, Richardson filed his Complaint. J.A. 006. On April 7, 2022, Defendants filed their Answer. J.A. 042. On July 26, 2022, Defendants filed a Motion for Judgment on the Pleadings. J.A. 054. Richardson filed an opposition, J.A. 054, and Defendants filed a reply, J.A. 086.

From May 24, 2022 to January 20, 2023, Richardson engaged in substantial discovery, which included: (a) serving requests for admission, interrogatories, and document requests on each Defendant; (b) serving subpoenas duces tecum on

15

several third-party witnesses; and (c) deposing eight individual witnesses and two entity witnesses. On January 31, 2023, the district court granted Defendants' Motion for Judgment on the Pleadings.[4] J.A. 094. On February 28, 2023, Richardson filed a notice of appeal in the district court. J.A. 104.

### C.    Rulings Presented for Review

On January 31, 2023, the district court granted Defendants' Motion for Judgment on the Pleadings. J.A. 094.

The court entered judgment in favor of Defendants on all claims after incorrectly holding that Richardson's claims were too speculative for Article III purposes. The linchpin of the court's reasoning was the conclusion that Richardson's allegations failed to demonstrate that his efforts to obtain a U&O permit were futile.[5] But more concerning is that the court made its ruling without affording either party the opportunity to present any of the evidence gathered over the six-month discovery period that would have likely resulted in a different outcome.

---

[4] Richardson was scheduled to depose Appellee Melinda Bolling on February 3, 2023, and the dispositive motion deadline on liability was February 20, 2023.

[5] The court further concluded that the "futility doctrine does not apply...where seeking the benefit represents mere uncertainty or even what may be perceived as long odds[,]" and, thus, seemed to suggest that Richardson could not avail himself of the doctrine. J.A. 101.

16

## SUMMARY OF ARGUMENT

The central issue in this appeal is whether the district court erred in granting Appellees' motion for judgment on the pleadings without affording due consideration to the unequal treatment alleged by Richardson, a small minority business owner, under the law as compared to similarly situated large businesses. Richardson's claims challenge the imposition of a discriminatory barrier on the part of Appellees. A barrier that unlawfully restricted the ability of small business owners like Richardson from lawfully operating businesses at Iverson Mall in Temple Hills, Maryland.

The district court determined that Richardson's claims were too speculative for Article III purposes because: (1) Richardson never applied for or was denied a permit; and (2) Richardson's allegations do not demonstrate that his efforts to obtain a permit were futile. But, as further explained below, the court's reasoning overlooks the fact that Richardson challenged the imposition of an unlawful barrier, not the receipt of a permit or other benefit. That is, Richardson alleged that DPIE's arbitrary and discriminatory practices at Iverson Mall deprived him of the right to participate in the local permitting process on an equal playing field under the law, thereby violating his constitutional rights. The Supreme Court has repeatedly explained that, in the context of an equal protection challenge, an aggrieved party like Richardson is not required to allege that he would have

17

received the permit at issue in order to pursue his claims, or even allege that he

applied for the permit if doing so would have been futile. Thus, if left

unchallenged, the decision of the district court sets a dangerous precedent that

contradicts the appropriate interpretation of Article III's doctrines of standing and

ripeness, specifically in relation to equal protection claims brought under the

Fourteenth Amendment.

Richardson further challenges the district court's decision to entertain

Appellees' motion for judgment on the pleadings without affording him the

opportunity to present any of the evidence he invested substantial resources in

gathering over the six-month discovery period. Importantly, the evidence gathered

sufficiently bridges any potential voids in the Complaint, and demonstrates how

Appellees' actions infringed upon Richardson's constitutional rights. Considering

that: (1) Richardson invested substantial resources in pretrial discovery; (2) the

decision was entered (i) after the close of discovery, (ii) on the eve of a key

deposition,[6] and (iii) three weeks prior to the dispositive motion deadline; and (3)

the importance of the civil rights claims at issue, the more prudent course of action

would have been to convert Appellees' motion to one for summary judgment or

---

[6] The parties stipulated to taking the deposition outside of the discovery period to
accommodate the deponent's schedule.

18

schedule a hearing on the motion, either of which would have afforded Richardson the opportunity to present evidence in support of his claims.

For these reasons, Richardson respectfully contends that the district court erred in holding that his claims were "too speculative" for Article III purposes, and abused its discretion by entertaining the Rule 12(c) motion in light of the substantial discovery that occurred over the six-month period after it was filed.

## ARGUMENT

### I.    The district court erred in granting Appellees' Motion for Judgment on the Pleadings based upon its finding that Richardson's claims were "too speculative" for Article III purposes.

The Constitution grants Article III courts the power to decide "Cases" or "Controversies." U.S. Const., Art. III, § 2. That is, a case must "embody a genuine, live dispute between adverse parties, thereby preventing the federal courts from issuing advisory opinions." *Carney v. Adams*, 141 S. Ct. 493, 498 (2020) (citations omitted). The "live dispute" inquiry forms the basis of the standing doctrine, which requires that a litigant "prove that he has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision." *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013). To establish Article III standing, a plaintiff must show (1) an "injury in fact," (2) a sufficient "causal connection between the injury and the conduct complained of," and (3) a "likel[ihood]" that the injury "will be redressed by a

favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992) (internal quotation marks omitted).

This appeal centers solely on the injury-in-fact element, which helps to ensure that the plaintiff has a "personal stake in the outcome of the controversy." *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (internal quotation marks omitted). To establish an injury-in-fact, Richardson must show that he suffered a harm that was "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan*, 504 U.S. at 560 (some internal question marks omitted); *see also Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014) (noting that the party invoking federal jurisdiction bears the burden of establishing standing). In the context of an equal protection challenge, an injury-in-fact can be established from the inability to compete on an equal footing with a similarly situated comparator. *See Gratz v. Bollinger*, 539 U.S. 244, 262 (2003).

Here, not only did Richardson adequately allege that Appellees denied him the opportunity to participate in the local permit procurement process on an equal basis, *see* J.A. 009, 010, 012, 014, 015, 016, 019, 020, and 023, but he further alleged sufficient facts to make a substantial showing that applying for a U&O permit would have been a futile effort, J.A. 013, 014, 019, and 026. Therefore, the district court erred in granting Appellees' Motion for Judgment on the Pleadings.

20

A.    Standard of Review

A district court's decision to grant judgment on the pleadings is reviewed de novo by an appellate court, applying the same standard as a 12(b)(6) motion to dismiss. *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 375 (4th Cir. 2012) (citation omitted). In considering a 12(b)(6) motion, the court accepts as true all well-pled facts and draws all reasonable inferences in favor of the non-moving party. *See Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014) (citing *Butler v. United States*, 702 F.3d 749, 751–52 (4th Cir. 2012)). However, a court is "not required to accept legal conclusions drawn from the facts," *Prynne v. Settle*, 848 F. App'x 93, 90 (4th Cir. 2021) (citations omitted), or "conclusory allegations regarding the legal effect of the facts alleged, *United Mine Workers of Am. V. Wellmore Coal Corp.*, 609 F.2d 1083, 1085-86 (4th Cir. 1979).

A motion for judgment on the pleadings "should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014); (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)); *see also Sheppard v. Beerman*, 18 F.3d 147, 150 (2nd Cir. 1994) ("[The Rule 12(c)] standard is applied with particular strictness when the plaintiff

21

complains of a civil rights violation.") (citation and internal quotations marks

omitted). Said differently, "a defendant may not prevail on a motion for judgment

on the pleadings if there are pleadings that, if proved, would permit recovery for

the plaintiff." *Somerville v. West Town Bank & Trust*, 2020 WL 8256358, at *1 (D.

Md. Dec. 4, 2020) ("Moreover, unlike a Rule 12(b)(6) motion, a Rule 12(c) motion

requires the court to consider and decide the merits of the case, on the assumption

that the pleadings demonstrate that there are no meaningful disputes as to the facts

such that the complaint's claims are ripe to be resolved at this very early stage in

the litigation.") (citations omitted).

### B.     Richardson alleged adequate facts to establish that he has standing to pursue his claims and that they are ripe for adjudication.

The district court held that Richardson's claims were "too speculative for

Article III purposes" because the allegations in the Complaint failed to demonstrate

that his efforts to obtain a permit were futile.[7] J.A. 101. As a threshold matter,

however, Richardson was not required to make a showing of futility to establish

---

[7] In its Memorandum Opinion, the district court also noted that the futility doctrine does not apply "where seeking the benefit represents mere uncertainty or even what may be perceived as long odds." J.A. 101. Although seemingly dicta, this proposition appears to conflict with controlling case law that suggests otherwise. *See, e.g.*, *Sporhase v. Nebraska ex rel. Douglas*, 458 U.S. 941, 944, n.2 (1982) (acknowledging that appellants would have still had standing to challenge the legality of a reciprocity requirement even though they would not have been granted a permit had they applied for one).

Article III standing (or ripeness) because his claims challenged the imposition of an unjust barrier erected by DPIE, not the receipt of a U&O permit. *See, e.g.*, *Gratz*, 539 U.S. at 262 ("The 'injury in fact' in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit") (citation omitted); *Northeastern Fla. Chapter, Associated Gen. Contractors of America v. Jacksonville*, 508 U.S. 656, 666 (1993) ("When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing."); *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 211 (1995) ("The aggrieved party need not allege that he would have obtained the benefit but for the barrier in order to establish standing.") (internal quotation marks omitted).

Nonetheless, the district court based its decision on the fact that Richardson had not applied for or been denied a U&O permit, J.A. 101, the position taken by Appellees in their motion, J.A. 066. *But see Carney*, 141 S.Ct. at 503 ("an aggrieved party need not allege that he would have obtained the benefit but for the [unlawful] barrier in order to establish standing.") (citation omitted). In doing so, the district court—and the Appellees—overlooked the fact that Richardson's

23

claims challenged the arbitrary barrier erected by DPIE that made it more difficult for small business owners like him to obtain a U&O permit at Iverson Mall than it did for large, politically connected business owners. *See, e.g.*, J.A. 015, 017, 018, 019, 020, 021, and 023. Moreover, Richardson can establish standing by alleging facts that demonstrate he was able and ready to apply for the permit, *see Carney*, 141 S.Ct. at 502-503 (collecting cases), which he did. To be clear, Richardson alleged sufficient facts that—accepted as true—demonstrate he was able and ready to apply for a U&O permit as soon as DPIE lifted its discriminatory policy that prevented equal consideration of his permit application. *See* J.A. 011, 013, 014, 019, and 026.

Richardson further alleged that he expended a significant amount of time and resources in preparing to open Town Hall Live at Iverson Mall, including obtaining an electrical permit, transferring his liquor license to the location, applying for a non-load bearing wall permit, and persistently engaging with DPIE employees and other stakeholders. *See* J.A. 011, and 013-016. For purposes of Article III standing and ripeness, Richardson was only required to allege that some discriminatory classification prevented him from competing on an equal playing field in his quest for a U&O permit or other benefit. *See Gratz*, 539 U.S. at 261 (holding that the plaintiff had standing to pursue his claims where he alleged that the University's use of race in undergraduate admissions denied him the

24

opportunity to compete for admission on an equal basis). Richardson not only met

the minimum pleading threshold required under Supreme Court precedent, but he

sufficiently alleged facts that, if proven, demonstrate Appellees deprived him of his

civil rights.

Thus, had the district court properly interpreted Article III's standing and

ripeness doctrines in the context of Richardson's equal protection challenge, it

would have likely determined that Richardson has standing to pursue his claims.

### 1. Richardson's allegations sufficiently demonstrate that applying for a U&O permit would have been a futile effort.

A plaintiff is generally required to submit to a challenged policy before he or

she can have standing to challenge the policy. *See Prayze FM v. F.C.C.*, 214 F.3d

245, 251 (2d Cir. 2000) (citation omitted). But as the district court properly noted,

"[c]ourts have repeatedly found that filing an application for a permit, license, or

other such benefit is futile—and thus a claim is ripe—where a plaintiff is clearly

barred from accessing the benefit in question." J.A. 100; *see also Carney*, 141

S.Ct. at 503 ("[O]ur precedents have...said that a plaintiff need not translate his or

her desire for a job...into a formal application where that application would be

merely a futile gesture.") (internal quotation marks omitted) (cleaned up); *accord*

*Hamilton v. Pallozzi*, 848 F.3d 614, 621 (4th Cir. 2017) (collecting cases).

Here, Richardson alleged sufficient facts to demonstrate that applying for a U&O permit would have been a futile effort. Specifically, for example, Richardson alleged that:

1) DPIE representatives told him that he could apply for a U&O permit but that the Agency could not issue any new U&O permits until AWE obtained a U&O permit for Iverson Mall, J.A. 013 and 014;

2) DPIE's statements were pretextual because the Agency granted U&O permits to similarly situated businesses during the time that AWE did not have a valid U&O permit for Iverson Mall, J.A. 010, 014, 016, 019, 020, and 021; and

3) upon challenging DPIE's discriminatory policy or position, the Agency continued to maintain that it could not issue Richardson a U&O permit until AWE obtained one for Iverson Mall, J.A. 014, 019, and 027.

These allegations, taken as true, sufficiently implicate a level of futility to allow Richardson's claims to proceed on the merits. Moreover, the allegations give rise to a reasonable inference that if Richardson had applied for a U&O permit in January 2020, he would have been in no better shape today because of DPIE's discriminatory policy.[8]

In their reply brief, J.A. 086, Appellees argued that "the only substantial showing [of futility] that has been made [by Richardson] is the County's efforts to

---

[8] In discovery, Richardson deposed another minority small business owner who applied for a U&O permit in July 2019 to open a hair and nail salon at Iverson Mall. Despite passing all the prerequisites to obtain the U&O permit, DPIE still has not issued the U&O permit to the business owner because of the same discriminatory policy Richardson challenged. Unfortunately, Richardson was not afforded the opportunity to present this evidence before the district court.

26

resolve [Richardson]'s permitting issues and [Richardson]'s refusal to meet." J.A.

092.[9] While the latter is merely a conclusory allegation that exists nowhere in the

Complaint,[10] the former wholly misconstrues the nature of Richardson's civil

rights action. But the district court seemed to accept the contentions raised in

Appellees' motion as true rather than the well-pled facts set forth in Richardson's

Complaint—the proper standard when considering a 12(c) motion. In doing so, the

district court overlooked the numerous allegations made by Richardson that show

Appellees failed to take any meaningful action to address or rectify the unlawful

barrier erected by DPIE that prevented him and other small business at Iverson

Mall from participating in the permitting process on an equal playing field.

For these reasons, the district court erred in holding that Richardson lacks

standing to pursue his claims.

### 2. *Richardson's claims are ripe for judicial review.*

Ripeness is a principle of justiciability deeply grounded in both the Article

III case-or-controversy requirement and prudential considerations. *Reddy v. Foster*,

---

[9] The evidence Richardson gathered in discovery directly contravene the contentions raised in Appellees' motion. Unfortunately, Richardson was not afforded the opportunity to present this evidence to the district court.

[10] The evidence produced in discovery confirms that Appellee Melinda Bolling cancelled the meeting invitation at the last minute and thereafter refused to meet with Richardson to discuss the matter despite his repeated requests. Unfortunately, Richardson was not afforded the opportunity to present this evidence to the district court.

845 F.3d 493, 500 (1st Cir. 2017); *see also DaimlerChrysler Corp. v. Cuno*, 547

U.S. 332, 335 (2006) (acknowledging that the doctrines of standing and ripeness

originate from the same Article III limitation). The ripeness doctrine serves "to

prevent the adjudication of claims relating to 'contingent future events that may

not occur as anticipated, or indeed may not occur at all.'" *Id*. (quoting *Texas v.

United States*, 523 U.S. 296, 300 (1998)). "A claim should be dismissed as unripe

if the plaintiff has not yet suffered injury and any future impact 'remains wholly

speculative.'" *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 758 (4th Cir. 2013)

(quoting *Gasner v. Bd. of Supervisors*, 103 F.3d 351, 361 (4th Cir. 1996)).

     To the extent that the district court concluded Richardson's controversy was

not ripe for judicial review because he never applied for or had been denied a

permit,[11] the conclusion is misguided. As explained above, the fact that Richardson

did not apply for a permit does not prevent him from challenging the unlawful

conduct (or policy) that inhibited him from participating in the permitting process

on an equal footing. At the pleadings stage, Richardson has adequately pled that

Appellees' discriminatory policy and conduct were "final and not dependent on

future uncertainties." Accepting his allegations as true—the proper course of action

---

[11] The district court discusses both standing and ripeness in its decision, but does
not go as far as to expressly identify the doctrine upon which its holding rests.
Presumably, this is because standing and ripeness boil down to the same question
in this case.

when considering a Rule 12(c) motion—Richardson's claims are ripe for judicial review.

For these reasons, the district court erred in holding that Richardson's claims are not ripe for judicial review.

## II. The district court abused its discretion in entertaining Appellees' Motion for Judgment on the Pleadings after the parties engaged in substantial discovery.

Appellees moved for judgment on the pleadings on July 26, 2022. J.A. 054. Thereafter, Richardson invested substantial resources in pretrial discovery over a period of six months, which resulted in the production of copious evidence that supports his claims and rebuts Appellees' defenses. Shortly after the close of discovery, and three days before the deposition of Appellee Melinda Bolling (the former Director of DPIE), the district court granted Appellees' motion without a hearing or otherwise affording Richardson the opportunity to present any of the evidence gathered in discovery. J.A. 094. The evidence bears strongly on Richardson's futility claim—a factual-intensive inquiry that should survive a Rule 12(c) motion under the circumstances. *See generally Language Drs., Inc. v. MCM 8201 Corp., LLC*, No. 20-CV-1755, 2021 WL 718940, n.5 (D. Md. Feb. 24, 2021) ("A Rule 12(c) motion seeks a remedy that is available and appropriate only in certain circumstances—namely, to 'dispos[e] of cases in which there is *no substantive dispute* that warrants the litigants and the court proceeding further.'")

29

(quoting Wright & Miller, 5C Fed. Prac. & Proc. Civ. § 1368 (3d ed.)) (emphasis added). Denying either party the opportunity to present evidence in support of their claims or defenses when confronted with a Rule 12(c) motion, under these specific circumstances, should constitute an abuse of discretion.

A.    **Standard of Review**

The district court's decision to entertain Appellees' motion for judgment on the pleadings should be reviewed for abuse of discretion. *See generally Grajales v. Puerto Rico Ports Authority*, 682 F.3d 40, 46 (1st Cir. 2012) (acknowledging that district courts enjoy broad discretion in managing their dockets, including the decision to entertain a Rule 12(c) motion). And while it's well established that district courts enjoy wide discretion in deciding to entertain such motions, their discretion is not unbound. *See, e.g.*, *id.* ("[a] district court should hesitate to entertain a Rule 12(c) motion that asserts a complaint's failure to satisfy the plausibility requirement."); *Ginsburg v. InBev NV/SA*, 623 F.3d 1229, 1233, n.3 (8th Cir. 2010) (expressing concern regarding the appropriateness of a Rule 12(c) motion filed after a preliminary injunction hearing that generated an extensive factual record). "A district court abuses its discretion when it acts arbitrarily or irrationally, fails to consider judicially recognized factors constraining its exercise of discretion, relies on erroneous factual or legal premises, or commits an error of

law." *United States v. Byrd*, 859 F. App'x 669, 671 (4th Cir. 2021) (citations omitted).

> **B.    Richardson should have been afforded an opportunity to present the evidence he gathered during the six months of discovery that would have filled in any perceived gaps in his Complaint.**

The Fourth Circuit has not directly addressed the question of whether it is an abuse of discretion for a district court to consider a Rule 12(c) motion after the parties have engaged in substantial pretrial discovery, although the Court did briefly touch on the subject in an unpublished opinion from 1992. *See Reynolds Assocs. v. Kemp*, 1992 WL 207747, n.4 (4th Cir. August 28, 1992) (finding that a district court's consideration of a Rule 12(c) motion two weeks before trial was within "the sound discretion of the judge" where the motion effectively disposed of the case). Courts in other circuits, and at least one court in this circuit, have, however, considered the issue. *See, e.g.*, *Grajales*, 682 F.3d at 46 (1st Cir. 2012) ("[O]nce the parties have invested substantial resources in discovery, a district court should hesitate to entertain a Rule 12(c) motion that asserts a complaint's failure to satisfy the plausibility requirement."); *Ideal Steel Supply Corp. v. Anza*, 652 F.3d 310, 320 (2nd Cir. 2011) (holding that the district court erred in dismissing plaintiff's complaint under Rule 12(c) when evidence produced in discovery could fill the perceived gaps in the complaint); *Ginsburg v. InBev NV/SA*, 623 F.3d 1229, 1233 n.3 (8th Cir. 2010) (expressing concern about

31

entertaining a Rule 12(c) motion to test the plausibility of a complaint following a preliminary injunction hearing that generated an extensive record); *Perez v. Oak Grove Cinemas, Inc.*, No. 3:13-cv-728-HZ, 2014 WL 1796674, at *4 (D. Or. May 5, 2014) (denying Rule 12(c) motion for judgment on the pleadings where discovery, including depositions, had already taken place); *AM Gen. LLC v. Demmer Corp.*, No. 3:12-cv-333, 2013 WL 5348484, at *6 (N.D. Ind. Sept. 23, 2013) (denying a 12(c) motion on the grounds that a significant amount of discovery had taken place and the complaint contained detailed factual allegations supporting the claims); *Stevens v. Showalter*, 458 B.R. 852, 857 (D. Md. 2011) ("[T]here is at least some authority for the proposition that *Twombly* and *Iqbal* do not require dismissal of a suit where discovery and/or trial have filled in any potential gaps in the plaintiff's complaint."). And while the plain language of Rule 12(c) expressly states that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings[,]" it is unduly prejudicial to Richardson to entertain such a motion under the circumstances without at least affording him the opportunity to present evidence gathered in discovery that may bridge any perceived gaps in the Complaint.[12]

---

[12] Richardson is mindful that the evidence gathered in discovery is not part of the record on appeal because it was never considered by the district court. *See* Fed. R. App. P. 10 and 28(e). Should the Court, however, be interested in reviewing the evidence Richardson would have relied upon if afforded the opportunity, Richardson respectfully requests permission to submit a supplemental joint

For these reasons, and under the specific circumstances of this case, the district court abused its discretion in entertaining Appellees' Motion for Judgment on the Pleadings.

## CONCLUSION

For the reasons stated, Appellant Randy Richardson respectfully requests that the Court reverse the district court's decision, and remand the case with directions to the district court to deny Defendants' Motion for Judgment on the Pleadings.

Dated:  June 22, 2023

*/s/ Jordan D. Howlette*
JORDAN D. HOWLETTE
MD Bar No.: 2006110003
Managing Attorney
JD Howlette Law
1140 3rd St. NE
Washington, DC 20002
Tel: (202) 921-6005
Fax: (202) 921-7002
jordan@jdhowlettelaw.com
*Counsel for Plaintiff-Appellant*

---

appendix with a separate volume containing the evidence, together with a supplemental brief.

## REQUEST FOR ORAL ARGUMENT

In accordance with Rule 34(a) of the Federal Rules of Appellate Procedure, Richardson respectfully requests oral argument in this case as it presents important issues concerning the analysis and application of Article III standing to equal protection claims under the Fourteenth Amendment, and the applicability of the futility doctrine to cases in the Fourth Circuit involving challenges to Article III standing.

34

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

I hereby certify that, in accordance with Rule 32(g) of the Federal Rules of Appellate Procedure:

1.      This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), the brief contains 7,569 words.

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Office Word in Times New Roman, 14-point font.

Dated: June 22, 2023

Respectfully submitted,

*/s/ Jordan D. Howlette*
JORDAN D. HOWLETTE
Managing Attorney
JD Howlette Law