## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

---

### No. 23-1235

---

RANDY RICHARDSON

       Plaintiff - Appellant,

          v.

PRINCE GEORGE'S COUNTY, MARYLAND, ANGELA ALSOBROOKS AND
MELINDA BOLLING,

       Defendant – Appellees.

---

Appeal from the United States District Court
For the District of Maryland
Greenbelt Division

---

### BRIEF OF APPELLEES

**RHONDA L. WEAVER**
**COUNTY ATTORNEY**

Shelley L. Johnson, Fed. No. 15853      Jordan D. Howlette
Prince George's County Office of Law   JD Howlette Law
1301 McCormick Drive, Suite 4100    1140 3rd Street, NE
Largo, Maryland 20774          Washington, D.C. 20002
(301) 952-5225              (202) 921-6005
sljohnson@co.pg.md.us       jordan@jdhowlettelaw.com
*Counsel for Defendants-Appellees*   *Counsel for Plaintiff-Appellant*

**Filed:  July 28, 2023**

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 23-1235    Caption: Randy Richardson v. Prince George's County, Maryland, et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Prince George's County, Maryland, Melinda Bolling and Angela Alsobrooks
(name of party/amicus)

who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.  Does party/amicus have any parent corporations?  ☐YES ☑NO
    If yes, identify all parent corporations, including all generations of parent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐YES ☑NO
    If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation?                ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?               ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
    party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
    caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
    corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?        ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational
    victim of the criminal activity and (2) if an organizational victim is a corporation, the
    parent corporation and any publicly held corporation that owns 10% or more of the stock
    of victim, to the extent that information can be obtained through due diligence.

Signature: _Shelley L. Johnson_ _____        Date: _____03/13/23_____

Counsel for: Appellee _____

Print to PDF for Filing

<u>**TABLE OF CONTENTS**</u>

Table of Citations ..................................................................................................... iii

INTRODUCTION ...................................................................................................... 2

STATEMENT OF THE CASE ................................................................................... 3

I.      FACTUAL BACKGROUND ............................................................................ 3

II.    PROCEDURAL HISTORY .............................................................................. 6

III.   SUMMARY OF ARGUMENT......................................................................... 7

IV.   STANDARD OF REVIEW............................................................................... 9

V.     ARGUMENT ................................................................................................... 10

         A.     DISTRICT COURT CORRECTLY GRANTED APPELLEES-
               DEFENDANTS MOTION FOR JUDGMENT ON THE PLEADINGS ... 10

               i.      Appellant did not suffer an injury-in-fact ........................................ 13

               ii.     Applying for Use and Occupancy Permit was not an exercise
                      in futility ..................................................................................... 14

               iii.    Mr. Richardson failed to assert sufficient allegations of the
                      imposition of an unjust barrier ......................................................... 15

               iv.    Mr. Richardson failed to assert sufficient allegations
                      demonstrating that he was able or ready to apply for a
                      use and occupancy permit ................................................................ 17

         B.     THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION
               IN RULING ON A TIMELY FILED MOTION FOR JUDGMENT
               ON THE PLEADINGS ............................................................................. 17

               i.      To deny a timely filed Rule 12(c) motion because discovery
                      was conducted defeats the purpose of the rule ................................. 17

               ii.     Cases cited by Richardson in support are distinguishable ............... 19

      iii.    Mr. Richardson's frustration with Iverson Mall's renovation progress does not equal unjust barrier ............................................... 22

IV.    Conclusion ......................................................................................... 23

Certification of Compliance ............................................................... 24

Certificate of Service .......................................................................... 25

## TABLE OF CITATIONS

**Cases**

*AM General LLC v. Demmer Corp*., 2013 WL 5348484 (N.D. Ind. Sept. 23, 2013) ...........................................................................................20

*Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) ........................................................................11

*Beck*, 848 F.3d at 271 ........................................................................12

*Butler v. United States*, 702 F.3d. 749, 751-752 (4th Cir. 2012).........................9,17

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408, 133 S.Ct. 1138, 1147-48, 185 L.Ed.2d 264 (2013) ........................................................................12

*Cooksey v. Futrell*, 721 F.3d 226, 240 (4th Cir. 2013)............................................11

*Drager v. PLIVA USA, Inc*., 741 F.3d. 470, 474 (4th. Cir. 2014) ...............................9

*Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999) ......................9,21

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) ........................................................... 10-11

*Ginsburg v. InBev NV/SA*, 623 F.3d 1229 (8th Cir. 2010) ........................................19

*Ideal Steel Supply Corp. v. Anza*, 652 F.3d 310 (2nd Cir. 2011)...............................19

*Language Doctors, Inc. v. MCM 8201 Corporate, LLC*, 2021 WL 71890, n. 5 (D. Md. Feb. 24, 2021) ........................................................................18

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 562 (1993) ........................ 12-13

*Nat'l Ass'n for the Advancement of Colored People v. Bureau of the Census*, PWG-18-891, 2019 WL 355743, at *8 (D. Md. Jan 19, 2019) ...............................11

*Pender v. Bank of Am. Corp.*, 788 F.3d 354, 368 (4th Cir. 2015)............................10

*Perez v. Oak Grove Cinemas, Inc.*, 2014 WL 1796674 (D.Or. May 5, 2014) ........19

*Scoggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262, 269
(4th Cir. 2013) .......................................................................................................11

*South Carolina*, 912 F.3d at 726 .................................................................................12

*Spokeo, Inc. v. Robins*, 578 U.S. 330, 337, 136 S.Ct. 1540, 1547 (2016).....10,12,20

*Steel Co. v. Citizens for Better Env't*, 523 U.S. 83 U.S. 83, 103 (1998) .................12

*Stevens v. Showalter*, 458B.R. 852 (D. Md. 2011) ...................................................20

*Va. Soc'y for Human Life, Inc. v. FEC*, 263 F.3d 379, 389 (4th Cir. 2001)............11

*Warth v. Seldin*, 422 U.S. 490, 498, 518 (1975) .......................................................10

*Whitmore v. Arkansas*, 495 U.S. 149, 155, 110 S.Ct. 1717, 109
L.Ed.2d 135 (1990) ................................................................................................13

*Williams v. Ozmint*, 716 F.3d 801, 808-809 (4th Cir. 2013) ....................................10

**Rules, Statutes and Code**

ERWIN CHEMERINKSKY, FEDERAL JURISDICTION § 2.4 (4th ed. 2003) ............................ 11
*Federal Rules of Civil Procedure* 12(b)(1) .................................................................10
*Federal Rules of Civil Procedure* 12(b)(6) .................................................................19
*Federal Rules of Civil Procedure* 12(c) ................................................................ passim

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

---

### No. 23-1235

---

RANDY RICHARDSON

        Plaintiff - Appellant,

        v.

PRINCE GEORGE'S COUNTY, MARYLAND, ANGELA ALSOBROOKS AND
MELINDA BOLLING,

        Defendant – Appellees.

---

Appeal from the United States District Court
For the District of Maryland
Greenbelt Division

---

### BRIEF OF APPELLEES

**RHONDA L. WEAVER**
**COUNTY ATTORNEY**

Shelley L. Johnson, Fed. No. 15853
Deputy County Attorney
Prince George's County Office of Law
1301 McCormick Drive, Suite 4100
Largo, Maryland 20774
(301) 952-3932
sljohnson@co.pg.md.us

*Counsel for Defendant-Appellees*

Filed:  July 28, 2023

1

## INTRODUCTION

This suit arose from Appellant-Plaintiff Randy Richardson's desire to open an after-hours club in the lower level of Iverson Mall ("the mall") located in Temple Hills, Maryland. To provide context to the case, Iverson Mall was constructed in the 1960s and is one of the oldest malls continuously operating in the County. For a number of years, the County and Iverson Mall have been involved in a number of enforcement actions involving various County Code violations, including deficient fire suppression system, that raised safety concerns, which resulted in the loss of its use and occupancy (U&O) permit. Because the mall serves what has been categorized by the County as an underserved community, closing the mall would have a significant negative impact to the surrounding community. Thus, the County and Iverson Mall began working together to address the various code violations and developed a timeline for renovations. Unfortunately, efforts to timely renovate the mall were frustrated by a number of factors, including the COVID-19 pandemic, that resulted in a County-wide shut down, bankruptcy of the owner of the mall, and sale of the mall.

In the midst of these efforts, Mr. Richardson entered into lease agreement with the owner of the mall, before he filed for bankruptcy, with the intent to open a nightclub with a 1000-person capacity in the lower level of the mall. His leased space had one entrance and exit that exited under a crumbling parking garage. The

previous tenants of the leased spaced moved out after the determined that they could not afford to make the improvements required by the County.

This is not a case of small business owners being held to a different standard than large business owners or the County stifling small minority businesses. This case demonstrates the importance of research and planning and what Lee Iacocca once said "every business and every product has risks. You can't get around it."

<strong>STATEMENT OF THE CASE</strong>

## I. FACTUAL BACKGROUND

The lawsuit filed by Randy Richardson arose from the conversion of leased space previously used as a church to an after-hours nightclub and the various Prince George's County Code violations associated with the leased space. Mr. Richardson's Complaint alleges that since 2014, Prince George's County's Department of Permitting, Inspection and Enforcement ("DPIE") engaged in discriminatory practices by depriving businesses of property interest at Iverson Mall. J.A. 008. Specifically, Mr. Richardson alleges DPIE refused to grant certain businesses use and occupancy permits due to these businesses lacking sufficient political influence. J.A. 008.

In January of 2020, Mr. Richardson signed a lease for a location inside Iverson Mall. J.A. 011. The property is located at 3701 Branch Avenue, Suite 1000, Temple Hills, Maryland (hereafter "Branch Avenue Property"). J.A. 011. The Branch

Avenue Property was previously occupied by a church and was zoned for commercial use.  J.A. 011-012.

Mr. Richardson negotiated the lease with JBG SMITH Properties (hereafter "JBG"), the property management company for Iverson Mall.  J.A. 011.  At the time the lease was negotiated, Mr. Richardson did not know Iverson Mall lacked a use and occupancy permit.  J.A. 011.  Further, JBG did not inform Mr. Richardson that Iverson Mall lacked a use and occupancy permit.  J.A. 011.  On January 22, 2020, Mr. Richardson filed a request to have his liquor license transferred to the Branch Avenue Property.  J.A. 013.  The request was granted.  J.A. 013.  On January 27, 2020, Mr. Richardson learned Iverson Mall lacked a use and occupancy permit after meeting with DPIE.  J.A. 013.  DPIE allegedly informed Mr. Richardson the permit issued with Iverson Mall would be resolved.  J.A. 013.  Mr. Richardson then applied for non-load bearing wall permit. J.A. 013.

On February 11, 2020, Plaintiff met with DPIE representatives.  J.A. 013.  The DPIE representatives informed Mr. Richardson that he could apply for permits to open his business, but DPIE would first have to resolve Iverson Mall's use and occupancy permit before his business could obtain its own use and occupancy permit.  J.A. 013.  Mr. Richardson alleges the DPIE representatives declined to provide information regarding the issues surrounding Iverson Mall's use and occupancy permit or why other businesses were allowed to open and operate in

4

Iverson Mall.  J.A. 014.  On April 17, 2020, DPIE issued Mr. Richardson electrical permits for the Branch Avenue Property.  J.A. 014.

Between April of 2020 and February of 2021, Mr. Richardson repeatedly contacted DPIE to learn when he could apply for a use and occupancy permit but was repeatedly told that DPIE first had to resolve the permit issue with Iverson Mall. J.A. 014.  On February 24, 2021, Mr. Richardson filed for a second permit for non-load bearing wall after being told DPIE lost the application from January 2020.  J.A. 015.  On March 2, 2021, Director Bolling, Director of DPIE, sent Mr. Richardson an email inviting him to a meeting to discuss potential long-term solutions.  J.A. 016. On May 3, 2021, Mr. Richardson met with Prince George's County Council Chair Calvin Hawkins II at the leased space to discuss the issues he was experiencing, and Council Chair Hawkins told him that he would raise the issues with the County Executive Angela Alsobrooks in an attempt to resolve the matter.  J.A. 016.

Mr. Richardson alleges DPIE began targeting his business by conducting inspections and issuing code violations on February 26, 2021, May 21, 2021, and September 2021.  J.A. 014-015.  DPIE levied $9,500 worth of fines against Plaintiff's business.  J.A. 017.

In September of 2021, a representative from the County Executive's Office allegedly contacted the Mr. Richardson to apologize for DPIE's "targeted" enforcement.  J.A. 018.  Following this conversation, inspections by DPIE ceased.

J.A. 018.  In October of 2020, officials with the County Executive's Office allegedly ordered DPIE and the Fire Department to remove corrective orders for the Plaintiff's business.  J.A. 018.

## II.    PROCEDURAL HISTORY

Mr. Richardson files suit in the United States District Court for the District of Maryland on March 1, 2022. J.A. 02.  Subsequently, counsel for Defendants filed their Notices of Appearances on March 24, 2022, and March 30, 2022, respectively. J.A. 02.  On April 4, 2022, counsel for Prince George's County, Maryland ("County") and the individually named County Defendants filed correspondence with the Court pursuant to the Court's Case Management Order requesting permission to file a preliminary motion (i.e., motion for judgment on the pleadings). J.A. 03.  On May 24, 2022, a telephone conference was held with the court and permission was granted to file a motion for judgment on the pleadings.  J.A. 03. Subsequently, the County and the individually named County Defendants filed their motion for judgment on the pleadings on July 26, 2022. J.A. 04, 054-0072.  On August 9, 2022, Mr. Richardson filed his response in opposition thereto.  J.A. 04, 073-085.  On August 26, 2022, Defendants filed their reply to Mr. Richardson's response in opposition thereto.  J.A. 04, 086-093.  On January 31, 2023, the court issued its memorandum opinion granting Defendants' motion for judgment on the pleadings. Plaintiff appealed that order.  J.A. 4, 095-103.

### III.    SUMMARY OF ARGUMENT

The District Court did not err when it granted the Appellee-Defendant's timely motion for judgment on the pleadings.  Mr. Richardson would have the court believe that he and another minority business owner were the only minority business owners that leased space in Iverson Mall.  This contention is not accurate and contradicted by the businesses identified in the Iverson Mall site plans. J.A. 035-036.  The site plans clearly demonstrate that not every business owner at Iverson Mall would be categorized as a large business owner.  Thus, the premise of Appellant-Plaintiff's argument is flawed on its face based on the documents attached to his complaint, which the District Court correctly considered in rendering its Memorandum Opinion.

As to the standing issue and Mr. Richardson's damages claim that the District Court found to be too speculative, Mr. Richardson admits that he did not apply for a use and occupancy permit but claims that efforts to obtain would have been futile.  Thus, the fact that he never applied for a U&O permit should not preclude him from prosecuting his case.  As alleged by Mr. Richardson in his Complaint, he met with DPIE representatives on more than one occasion and received permits to conduct specific work at the lease site.  J.A. 013-014.   He also asserts that he received an invitation from DPIE Director Melinda Bolling to meet and discuss "potential long-term solutions."  J.A. 016.    Thus, being told that your U&O permit approval is

contingent upon Iverson Mall resolving permitting issues does not constitute futility but merely a delay.

Mr. Richardson contends that the District Court erred when it granted the motion for judgment because he is not required to allege that he applied for the permit if doing so would have been futile. Clearly Mr. Richardson overlooked the District Court's finding that County officials invited him to a meeting to explore long-term solutions.  J.A. 016.  The fact that Mr. Richardson asserted factual allegations that the District Court was required to accept as true defeated his own argument on futility demonstrates the purpose of Rule 12(c), which is to test the sufficiency of the complaint.  Also, Mr. Richardson's allegations that he met with various DPIE officials, County Executive officials and the Chair of the County Council regarding his permitting issue defeats his unjust barrier argument because these allegations clearly show that his small business status did not create any barriers.

Finally, Mr. Richardson contends that the District Court erred when it granted the motion for judgment on the pleadings without permitting him to present evidence developed during discovery.  First, to permit the introduction of evidence not referenced or cited in the complaint would convert a motion for judgment on the pleadings to a summary judgment and nullify Rule 12(c).  As stated previously herein, a motion filed pursuant to Rule 12(c) is limited to the Complaint and any

documents attached or referenced in the Complaint. The fact that Mr. Richardson voluntarily elected to engage in discovery and expended considerable financial resources should be of no consequence to this Court. Mr. Richardson could have filed a motion to stay the proceedings until the District Court ruled on the motion for judgment on the pleadings, but he elected not to do so at his own peril.

In addition, the cases cited by Mr. Richardson in support of his contentions are factually and procedural distinguishable and provide this Court with no guidance as to the issues presented. None of the cases cited are presented with the issue of standing in a motion for judgment on the pleadings. And none of the cases were in the same procedural posture as the present case.

For these reasons, the District Court's memorandum opinion must be affirmed.

## IV.    STANDARD OF REVIEW

The Fourth Circuit Court of Appeals reviews de novo a district court's ruling on the motion for judgment on the pleadings. *Drager v. PLIVA USA, Inc*., 741 F.3d. 470, 474 (4th. Cir. 2014) citing *Butler v. United States*, 702 F.3d. 749, 751 (4th Cir. 2012). The standard of review for a motion filed pursuant to Federal Rule 12(c) is the same as that for a Rule 12(b)(6) motion. *Id*. at 751-752. Thus, a motion for judgment on the pleadings "should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable

factual inferences from those facts in plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitled him to relief." *Drager,* 741 F.3d at 474; (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). A motion filed pursuant to Rule 12(c) test the sufficiency of the complaint but does not resolve the merits of the plaintiff's claims or any disputes of fact. *Butler*, 702 F.3d at 751.

## V.      ARGUMENT

### A. DISTRICT COURT CORRECTLY GRANTED APPELLEES-DEFENDANTS MOTION FOR JUDGMENT ON THE PLEADINGS.

Standing is a threshold issue. "[W]hether the plaintiff has made out a 'case or controversy' between himself and the defendant . . . is the threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). A motion to dismiss for lack of Article III standing is evaluated under *Federal Rules of Civil Procedure* 12(b)(1). Plaintiff must show that he: "(1) suffered injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337, 136 S.Ct. 1540, 1547 (2016). "[A]t the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Id*. (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

Moreover, "the case-or-controversy requirement applies to all stages of a federal case" *Williams v. Ozmint*, 716 F.3d 801, 808-809 (4th Cir. 2013). Thus, "[i]f a live case or controversy ceases to exist after a suit has been filed, the case will be deemed moot." *Pender v. Bank of Am. Corp.*, 788 F.3d 354, 368 (4th Cir. 2015). "The doctrine of mootness can be described as 'the doctrine of standing set in a time frame: the requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997)).

In addition to standing, the "constraint of Article III" also includes the principle of ripeness, which "presents a 'threshold question [] of justiciability.'" *Scoggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262, 269 (4th Cir. 2013) (citation omitted). *See Nat'l Ass'n for the Advancement of Colored People v. Bureau of the Census*, PWG-18-891, 2019 WL 355743, at *8 (D. Md. Jan 19, 2019) ("NAACP") (describing standing and ripeness as "overlapping facets" of subject matter jurisdiction). Whereas standing focuses on who can sue, ripeness "'concerns the appropriate timing of judicial intervention.'" *Cooksey v. Futrell*, 721 F.3d 226, 240 (4th Cir. 2013) (quoting *Va. Soc'y for Human Life, Inc. v. FEC*, 263 F.3d 379,

389 (4th Cir. 2001)); *see NAACP*, 2019 WL 355743, at *8 (noting that standing addresses *who* may sue, and ripeness addresses *when* a party may sue).[1]

Here, the District Court correctly found Mr. Richardson lacked standing after all well-pleading facts as true and drawing all reasonable inferenced therefrom in Mr. Richardson's favor. Specifically, the District Court found that not only did Mr. Richardson fail to apply for a U&O permit but he also failed to avail himself to the invitation extended by Director of DPIE to meet and develop a long-term solution to his problem. J.A. 016, 102. Also, Mr. Richardson failed to avail himself to the administrative procedures available to him to contest his perceived grievance with DPIE.

To establish Article III standing, Mr. Richardson must have, first and foremost, suffered an injury-in-fact. *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83 U.S. 83, 103 (1998) (an injury-in-fact is the "[f]irst and foremost" of standing's three elements). To demonstrate an injury-in-fact, Mr. Richardson must have suffered "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 136 S. Ct. 1540, 1548 (2016)) (quoting *Lujan v.*

---

[1] As constitutional law scholar Erwin Chemerinsky explained, "Although the phrasing makes the questions of who may sue and when they sue seem distinct, in practice there is an obvious overlap between the doctrines of standing and ripeness." ERWIN CHEMERINKSKY, FEDERAL JURISDICTION § 2.4 (4th ed. 2003).

*Defenders of Wildlife*, 504 U.S. 555, 560 (1993)). Alternatively, a threatened injury can satisfy Article III standing, although "not all threatened injuries constitute an injury-in-fact." *Beck*, 848 F.3d at 271; see *South Carolina*, 912 F.3d at 726. "Threatened injury must be certainly impending to constitute injury in fact." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408, 133 S.Ct. 1138, 1147-48, 185 L.Ed.2d 264 (2013). A plaintiff cannot rely on an "attenuated chain of inferences" nor "on speculation" to claim injury. *Id.*; (quoting *Lujan*, 504 U.S. at 562). "The complainant must allege an injury to himself that is distinct and palpable, as opposed to merely abstract." *Whitmore v. Arkansas*, 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990).

### i.    *Appellant did not suffer an injury-in-fact.*

To satisfy the injury-in-fact element of standing, "plaintiff must have suffered an injury in fact, which is an invasion of a legally protected interest which is concrete and particularized and actual or imminent rather than conjectural or hypothetical; that there be a causal connection between the injury and conduct complained of so that the injury is fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party who is not before the court; and that it be likely, as opposed to merely speculative, that injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992).

Here, Mr. Richardson was unable to articulate any concrete, particularized, and actual injury he suffered because 1) he never applied for the U&O permit; or 2) met with County officials to develop a long-term solution. Thus, there is no indication that Mr. Richardson would not be issued a U&O permit in the future when the Iverson Mall code violations were resolved. In response, Mr. Richardson agrees to apply for a U&O permit would have been a futile exercise; thus, his failure to apply for permit must be excused and the court should allow his claims proceed in litigation.

> ii.    *Applying for Use and Occupancy Permit was not an exercise in futility*.

In his brief, Mr. Richardson contends that he is not required to show that applying for a U&O permit would have been futile to establish standing; but only that he was denied equal treatment resulting from the imposition on of unjust barrier. App. Brief at p. 23. Analysis under either doctrine results in the same conclusion that Mr. Richardson failed to satisfy the injury-in-fact element for standing and the District Court correctly granted Appellee's motion for judgment.

First, as argued in the motion for judgment and found the by the District Court, the fact that Iverson Mall's code violations, which are not the responsibility of the County, in a timeframe convenient for Mr. Richardson, does not render his efforts to obtain a U&O permit futile. J.A. 091, 101-103. As noted by the District Court,

the County invited Mr. Richardson to a meeting to discuss a long-term solution, which he declined. J.A. 016, 102. DPIE representatives did not tell him not to apply for a permit or that one would not be issued. J.A. 014. On the contrary, DPIE representatives told him that he could apply for the permit and based on the allegations asserted, DPIE representatives were responsive to his requests and were working to find a solution. J.A. 014-016. The problem arose when the renovations to Iverson Mall to cure the code violations were not being completed in a timeframe convenient to Mr. Richardson. Thus, Mr. Richardson believes that a permit delayed is a permit denied, which is not legal standard to satisfy the futility doctrine to overcome injury-in-fact element of standing.

### iii. *Mr. Richardson failed to assert sufficient allegations of the imposition of an unjust barrier.*

Assuming arguendo, Mr. Richardson is not obligated to show futility but only that he was denied equal treatment resulting from the imposition of an unjust barrier, again the facts as asserted by Mr. Richardson in the Complaint fail to satisfy the pleading standard for standing. Accepting as true the allegations asserted in the complaint and all reasonable inferences therefrom, the court must find that Mr. Richardson actually received more access to County officials than any other tenant, large or small. Mr. Richardson not only met and/or spoke with DPIE representatives on at least three separate occasions, he also had a meeting with the Chair of the County Council, the Deputy Chief Administrative Officer, and the County

Executive's Chief of Staff.  J.A. 016-019.  Obviously, not everyone is granted meetings with the County Executive's Chief of Staff, the Deputy Chief Administrative Officer, and the Chair of the County Council to discuss permitting issues.  It is not even alleged that any large business had similar meetings.  A reasonable inference from Mr. Richardson's well-pleaded facts leads to only one conclusion that Mr. Richardson has absolutely no problem competing with big or small businesses in Prince George's County, Maryland.  More importantly, the Complaint is void of any allegations that Mr. Richardson was denied the opportunity to file for a permit, discuss the permitting issue with DPIE representatives or County Executive officials.

Moreover, the Complaint is void of any allegations that large businesses had an easier path to the issuance of a U&O permit than Mr. Richardson.  Setting aside all conclusory statements in the Complaint, there are no factual assertions in the Complaint that any large business experienced an easier path to obtaining a U&O permit than Mr. Richardson. The fact that a large store opened for business before he opened for business means nothing on its own.  There are no factual assertions of when the large businesses leased space from Iverson Mall, how much money each business invested in the renovations of the leased space, efforts the large business expended to bring the leased space up to County Code standards, or that they were relieved of the requirements to meet the County Code requirements.  Again, the

District Court, like this Court, is left to speculate as to what the "large businesses" did to obtain use and occupancy permits.

> iv.   *Mr. Richardson failed to assert sufficient allegations demonstrating that he was able or ready to apply for a use and occupancy permit.*

There are no allegations asserted in the Complaint that Mr. Richardson was able and ready to apply for a U&O permit. On the contrary, the Complaint asserted allegations that Mr. Richardson was cited by the County and received corrections orders for failure to have a fire alarm sprinkler report, a valid electrical permit, mechanical permit, WSSC permit, and sprinkler permits. J.A. 015. Nowhere in the Complaint is it alleged that Mr. Richardson's leased space in Iverson Mall met all County Code requirements to open Mr. Richardson's business, which was Town Hall Live, an after-hours club. Thus, Mr. Richardson's assertion that he was able and ready to file for a U&O permit is nothing more than his hope and dreams.

### B. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN RULING ON A TIMELY FILED MOTION FOR JUDGMENT ON THE PLEADINGS.

> i.   *To deny a timely filed Rule 12(c) motion because discovery was conducted defeats the purpose of the rule.*

Mr. Richardson contends that the District Court abused its discretion when it ruled on the County's timely filed motion for judgment on pleadings after Plaintiff had completed substantial discovery. Mr. Richardson contends that the discovery conducted relates to the issue of futility, and he should have been afforded the

opportunity to present such evidence to the Court. First, to permit Mr. Richardson to introduce evidence not referenced in the Complaint to defeat a timely and properly filed motion for judgment on the pleadings renders Rule 12(c) null and void. As stated, a motion for judgment on the pleadings tests the sufficiency of the pleading, and not the merits of the case. *Butler*, 702 F.3d at 751. In the time that the motion was pending before the Court, Mr. Richardson could have moved to amend his Complaint to address any deficiencies that were identified by the County's motion and discovered during the six months of discovery the parties conduct, which may have rendered the County's motion for judgment on the pleadings moot. Mr. Richardson elected not to do so at his own peril.

In support Richardson relies on *Language Doctors, Inc. v. MCM 8201 Corporate, LLC*, 2021 WL 71890, n. 5 (D. Md. Feb. 24, 2021) for the proposition that "A Rule 12(c) motion seeks a remedy that is available and appropriate only in certain circumstances – namely, to "dispose of cases in which there is no substantive dispute that warrants the litigants and the court proceeding further." However, *Language Doctors, Inc*. is procedurally and factually distinguishable from the present case and should be disregarded. In *Language Doctors, Inc*., Language Doctors ("LTD") filed a declaratory action against MCM 8201 Corporate, LLC ("MCM") seeking the court's ruling on the termination date of an office lease agreement. *Id*. MCM filed a motion or judgment on the pleadings and the court

permitted LTD to file an amended complaint adding two causes of action before ruling on the MCM's motion. *Id*. MCM's motion for judgment on the pleadings only addressed the declaratory action in Count I. *Id*.

Unlike the present case, the granting of MCM's motion or judgment on the pleadings would not have "disposed of cases in which there is no substantive dispute that warrants the litigants and the court proceeding further." *Id*. The Court's allowance of LTD's amended complaint adding two additional claims that would not be resolved by the court's ruling of the determination of the termination date rendered MCM's motion essential moot. In the present case, the County's motion for judgment on the pleadings did dispose of the entire case and the issue before the court is standing, which threshold issue that must be addressed and resolved before reaching the merits of the case.

### ii. *Cases cited by Richardson in support are distinguishable*.

The other cases relied upon by Mr. Richardson are factually and procedurally distinguishable from the present case. None of the cases cited by Mr. Richardson involve the issue of standing, are within the Fourth Circuit or were at this procedural stage in litigation. See *Ideal Steel Supply Corp. v. Anza*, 652 F.3d 310 (2nd Cir. 2011)(litigation of the parties extended several years asserting various violations of the Racketeer Influence and Corrupt Organizations Act (RICO) and was initially dismissed pursuant to a Rule 12(b)(6) motion for failure to sufficiently plead

causation); *Ginsburg v. InBev NV/SA*, 623 F.3d 1229 (8th Cir. 2010) (the Eighth Circuit affirmed the grant of a judgment on the pleadings finding the plaintiffs, who were beer consumers and indirect purchasers because they did not buy the beer directly from the breweries, could not sue for damages under the Clayton Act and could receive an equitable remedy, which would only result in extensive discovery and unsuccessful trial); *Perez v. Oak Grove Cinemas, Inc*., 2014 WL 1796674 (D.Or. May 5, 2014)(the district court denied the judgment on the pleadings because it was filed after an extensive record had been generated by the parties and found sufficient allegations demonstrating violations of the Fair Labor Standards Act (FLSA)); *AM General LLC v. Demmer Corp*., 2013 WL 5348484 (N.D. Ind. Sept. 23, 2013)( the district court denied a partial motion for judgment on the pleadings because many of the arguments raised in the motion were more appropriate in a summary judgment motion and the disputed facts took the motion beyond the parameters of a Rule 12(c) motion); and *Stevens v. Showalter*, 458B.R. 852 (D. Md. 2011)(the district court affirmed the denial of a motion to dismiss that challenged the sufficiency of the complaint filed after the filing of an answer and after a trial on the merits.)

Here, the County filed the motion for judgment on the pleading before discovery was completed or substantially completed and the issue before the court is a jurisdictional issue that must be met at every stage of litigation. The County

20

should not be forced to continue to expend considerable time, effort and expenses defending a matter that is not ripe for judicial review, which is Rule 12(c)'s intended purpose. *Id.*

And more importantly in the present case, standing is a jurisdictional question that must be resolved before this Court can address the merits of Mr. Richardson's claims.    At the pleading stage, Mr. Richardson must "clearly alleging facts demonstrating each element of Article III standing. *Spokeo v. Inc. v. Robins*, 578 U.S. 330, 136 SCt. 1540, 194 L.Ed.2d 635 (2016).  Here, the District Court, "after accepting all well-pleaded allegations in [Mr. Richardson]'s favor, it appeared certain that he cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).  In support of the District Court's finding that Mr. Richardson's alleged injury-in-fact was too speculative, the District Court cited Mr. Richardson's well-pleaded allegation that he received an invitation for the Director of DPIE to a meeting to find a long-term solution to this permitting issues.  (J.A. 016, 102.)  A meeting that Mr. Richardson declined to attend. (J.A. 016.)   Mr. Richardson also pleaded that he attended meetings with County Executive Office officials and County Council members and all of which stated that they would work on finding a solution.  (J.A. 016.)  Clearly, being a small business owner in the County did not impose any barrier to Mr. Richardson as he was able to have meetings with senior County officials and the

Chair of the County Council, all which were responsive to his plight and sought to aide him in in quest to obtain a U&O permit.   Thus, the District Court correctly found that Mr. Richardson's claims are not ripe for judicial decision because based on the well-pleaded allegations, Mr. Richardson had not filed an application, had not met with the Director of DPIE to work on a long-term solution, and had meetings with several senior County officials up until January 2022. Therefore, the District Court was left to speculate as what might have been resolved if such a meeting had taken place or if County officials were provided more time to resolve Mr. Richardson's permitting issues before he filed suit less than three months later.

> ### iii.    Mr. Richardson's frustration with Iverson Mall's renovation progress does not equal unjust barrier.

It must be noted that Mr. Richardson filed his Complaint on March 1, 2022, less than three months from the last meeting with County officials.  Clearly, the issue before this Court is not one of an imposition of an unjust barrier because Mr. Richardson is a small-business owner, but his inability to open his business on his projected open date.  This does not equate to an unjust barrier imposed on Mr. Richardson by the County.  And quite simply, his frustration is misplaced because the County's responsibility to inspect is only invoked after the work is completed. Thus, Mr. Richardson's frustration is more appropriately directed to the owner of Iverson Mall that induced him to sign the lease agreement and not the County.

## VI.      CONCLUSION

For all of the reasons cited above, Appellee-Defendant Prince George's County, Maryland, respectfully requests that this Court affirm the District Court's granting of the County's Motion for Judgment on the Pleadings finding that Appellant-Plaintiff Randy Richardson's claims are too speculative for Article III purposes.  Accordingly, the holding of the District Court should be affirmed.

Respectfully submitted,

**RHONDA L. WEAVER**
**COUNTY ATTORNEY**

*Shelley L. Johnson*
Shelley L. Johnson, Fed. No. 15853
Andrew J. Murray, Fed. No. 10511
Prince George's County Office of Law
1301 McCormick Drive, Suite 4100
Largo, Maryland 20774
(301) 952-5225
sljohnson@co.pg.md.us

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this brief complies with the type-volume, typeface, and type-style requirements of Federal Rule of Appellate Procedure 32(a). This brief contains 5,101 words, excluding the parts of the document exempted by Rule 32(f) and was prepared in 14-point Times New Roman font, a proportionally spaced typeface, using Microsoft Word.

*<u>Shelley L. Johnson</u>*

Shelley L. Johnson, Fed. No. 15853

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 28, 2023, I electronically filed the foregoing Brief of Appellees with the Clerk of the Court for the U.S. Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system.  Participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.


<u>*Shelley L. Johnson*</u>
Shelley L. Johnson, Fed. No. 15853